Sailing. Judge Greenaway, are you there? I am. Okay, thank you. Counselor? And why don't we take the argument with respect to the merits first, appellant and appellee, and then we'll have the argument with respect to the fees, appellant, appellee. All right? Okay, Your Honor, that's fine, and I'd like to reserve one minute on that first phase of the argument. All right. Good morning, or perhaps is it afternoon? Good afternoon, Your Honors. My name is Stephan Herpel. I am attorney for the appellant in this case, Fairwind Sailing, Incorporated. Your Honor, Fairwind, in this case, alleged in its complaint that the defendants had basically copied all of the material elements of their sailing school business, which operated... You say elements of the business. Are you saying these are identical? I mean, copying is fair game. I mean, that's what people do all the time. There is no law against copying, but identicality of non-functional items can give rise to trade dress. So tell me what you're... Are you saying copying, or are this identical replication, such that the overall impression is that it's exactly the same? I think it is the overall look and feel, Your Honor, and we mentioned some of the elements of the business, the teaching curriculum, the itinerary. Is it identical? Yes, that's the allegation in the complaint, Your Honor. Was the teaching curriculum copyrighted? No, I don't believe so, Your Honor, and the procedures for student feedback, the web design. You said the types of boats, and I was confused by something. In your papers, you talk about the exclusive use of multi-hull catamarans, while on your website, you have photographs of mono-hull boats, and you discuss the multi-hull and mono-hull boats. So it seems inconsistent with making the trade dress argument you're making. Well, Your Honor, I don't... Are you speaking of the current website, or the website at the time? The website that's available in the papers. Because I think it was a reference to both models of boats and the multi-hull catamarans. You have a picture of a mono-hull boat on your website, and yet you claim that they copied the multi-hull catamaran, and that that's what was the key, or one of the key elements of your trade dress claim. Well, Your Honor, I can't... I believe that the course offers both mono-hull and multi-hull or catamaran, but I think the key, really, is that the web design in our trade dress claim, and that's the most important aspect of the trade dress claim. You're saying I look on their website, and I say, oh, this is fair winds. Is that right? Yes, that they've incorporated elements of our website, that the web addresses also are identical, save for that one difference in letter, Virgin Islands. What is your trade dress? Because a lot of what you described, like using boats, and following a teaching curriculum, and soliciting student reviews, sounds like your trade. What is the impression that we're supposed to take away from your complaint about what fair winds, how fair winds appears in public, or to the public? It's really through the website, Your Honor. I mean, they even took testimonials, that was the allegation of the complaint, testimonials from students who took our course and posted them to their website. They used a web address that was virtually identical to ours, save for one dot com, with one S rather than two. You're saying that someone would look at that, and I'm talking about the clicks case, because you rely on that, but there it's the overall impression. You walk into one place, and you say, oh, this must be X, and in fact it isn't, but it gives that such the impression that it is X. Is that what you're saying, that someone going on their website would say, oh, this must be the fair winds website? Yes, Your Honor. But there's nothing particularly distinctive about using boats and using a website, is there? Well, I think, again, in the trade dress area, Your Honor, you can't use this atomized approach that the district court did and say, well, this is functional, that element is functional, that, it's the overall combination, and the number of circuits have said that. The Second Circuit rejected that atomized approach in a case called, let's see, Sportsar v. Kmart reported at 754F2-71. You're suggesting that individually, yes, maybe they are not distinctive, but collectively. Like the click case that Judge Rendell just mentioned, like the pool hall. Exactly, that was the clicks case, and the Seventh Circuit rejected that same notion, this atomized approach, and said, no, you don't look at each element of the business. I mean, even in the pool hall, you could say the placement of the pool tables had a function. What is distinctive about fair winds? I mean, what is the image? What is it about you that would confuse the public? Well, again, I think it's the website. The website, Your Honor, and I think the court was very dismissive of the idea that a website can give rise to trade dress infringement, copying or mimicking a website. It happens quite often, doesn't it? Here's the problem I have with the website argument. For instance, you say on the website that we're ICSO approved. Now, that can't possibly be non-functional, right? Because others can be ICSO approved, yes? Yes, they can be. And it's also clear that your VISS is ASA approved and not ICSO approved, correct? Yes, Your Honor. And on your website, you say we're not just ICSO approved, we're also ASA approved. So, you know, you want us to look at the website, yet there are all these things that you argue are part of what makes up some sort of uniqueness about your website and the trade dress violation. But I'm not seeing a distinctiveness with yours. There are conflicting statements about the multi-hull, mono-hull, about the ICSO. I'm very confused about what it is that's non-functional, what it is that we can look to to clearly say there's a trade dress violation. Well, Your Honor, do we have to do that at the pleading stage, at the Rule 12 stage? I mean, those are fact questions, those are fact-intensive questions that have to be developed through discovery and perhaps ultimately a trial or a preliminary injunction hearing. But, you know, Judge Gibson in the Western District of Pennsylvania in a case, a very thoughtful opinion, in a case called Conference Archives, Inc. vs. Sound Images, the Lexis site is 2010. Is this in your papers? Pardon me? Is this in your papers? No. All right, would you go a little bit more slowly then? Yes, I will, Your Honor. It's Judge Gibson, Western District of Pennsylvania. The case name is Conference Archives, Inc. vs. Sound Images, Inc. The Lexis site is 2010 U.S. District Lexis 46955, a 2010 case. And he held that the look and feel of a website can constitute a trade dress protected by the Lanham Act. It's an elaborate opinion, it cites scholarly literature, and he described that issue as one of first impression in the Third Circuit. And he suggested that, you know, the website, the use of websites as a marketing tool and as a way to basically make an identity for your business. This is a fairly new form of intellectual property, and he emphasized that, you know, the law of trade dress he thought was uniquely suited to being adapted to protect this new form of intellectual property. Other than the feedback issue and the picture of the catamaran, aren't the websites essentially different? Well, Your Honor, they use the testimonials, our testimonials. He used the picture of our boat. That was not, the district court said it's a boat. Well, that really begged the question or ignored the key. Testimonial is. It was a picture of our boat that was on their website. What, if you're going to mimic a website. You're atomizing. Pardon me? You're atomizing. You're talking about little specifics. What the trade dress area is designed to accomplish is you look at the overall impression. And, you know, there has been a secondary meaning and it's distinctive. And therefore, you look at that and you say, ah, that must be fair winds because you look at it. It's acquired a secondary meaning. It's distinctive. And yet it isn't fair winds. It's somebody else. But they're they're trading on your trade dress, much like the clicks, the impression. And what I sense from looking at the two websites is that's not what happens when you look at their website. But again, is this an issue to be decided at the pleading stage? OK, that's a valid point. I mean, we alleged that they were that they were copying our web design and our features. Copying is OK. Pardon me? Copying is OK to a point. Not copying trade dress, Your Honor. Did you plead in your complaint that the website was part of your trade dress? Yes, we did, Your Honor. And we did. And in fact, the judge addressed it. The district court addressed it, I think, very dismissively. I thought it was the web name more than the website itself. No, it was we talked about web features and even the judge at page 14 of his opinion, I believe it's joint appendix. And the district judge talked about the web features and feature, but very, very dismissively. And quite a striking contrast between this district court's treatment of the issue of trade dress as applied to Web sites compared to Judge Gibson's treatment. The judge also focused on the functionality issue and looked at each one of the elements that are part of your trade dress, or you say are part of your trade dress, including the use of boats and the curriculum and the soliciting student reviews, etc., which to me just means feedback and is very common nowadays. But in any event, he said all of these are functional and they are non-distinctive. What more do you need to rule on the face of the complaint? Well, again, the third, the Clicks case was in the context of a summary judgment. It was, but it had to do with the arrangement of the furniture as well as the colors of individual items. They were mimicked just as if I opened a McDonald's across the street from a McDonald's but didn't call it McDonald's. Everybody, that's intended to confuse. But the court conceded that each of those individual elements, the appellate court conceded that each of those individual elements were functional. And yet, taken together, that there was a protectable trade dress. And the Second Circuit, I mentioned, I didn't cite this in the briefs, but so I'll give a very quick citation. Again, 754 F. 2nd. 71. Again, even if the individual components viewed in isolation are functional, it's the overall look and appearance that matters. That, again, was not at the pleading stage, Your Honor. That was at a preliminary injunction stage, I believe, or summary judgment stage. The Ninth Circuit, excuse me. What can be done with discovery? How is that going to alter what either is or isn't apparent in terms of trade dress? What can discovery do to inform this? I think there can be expert testimony, Your Honor, on the similarities that are important to the- Expert testimony? Yes. Aren't we really talking about something that the jury is supposed to figure out? Yes. I mean, it can be both. But I think that an analysis of the two websites- I mean, this is a matter of law. And you're not going to have an expert say, as a matter of law, this is or is not trade dress, are you? No. But I suppose on the functionality questions that that is something that could be addressed by expert testimony. But I do think that, you know, the fact finder is going to have to look at the website side by side. There might be some, you know, perhaps expert testimony could come in on surveys of customers in confusion, whether there is a palming off or a passing off, as we contend, in mimicking the website. But let's talk about the distinctiveness and the secondary meaning, because those are necessary ingredients. How have you shown that, or how can you show that, even in discovery, when you haven't really pled it? Well, Your Honor, the 10-factor test and the 11-factor test, I think there's an 11-factor test for confusion, which wasn't reached by the district court, and a 10-factor test for secondary meaning. I mean, these are tests that are not applied at the pleading stage. We don't have to plead each of those 10 factors in order to survive a motion to dismiss. This, to me, this is where the court jumped the gun. The court almost treated this as a motion for summary judgment. It basically said trade dress is simply not cognizable. A trade dress infringement claim as relates to a sailboat school. Would that be true of any school? A language school? A Berlitz language school? The trade dress simply doesn't apply to schools, because they're functional. And nearly everything you can say, even about the website promotion and identity of the business, you could characterize individually as functional. Yeah, you could. I was just going to ask you that. I mean, a website is functional. You don't disagree with that. You don't disagree that a curriculum is functional. You don't disagree with student reviews being functional, that's feedback. But you say collectively, however, this is your trade dress. Well, I agree with Judge Gibson that a website can have a look or feel, and that increasingly the business identity is through a website in modern marketing. Yeah, but if you look at two sailing schools, they're going to teach you how to sail. There are only a certain number of components that one can advertise as providing if you're a sailing school. The teaching curriculum, you know, you're both going to do monohull. You're both going to do multihull. You're both going to have particular types of both available and methods to teach available. How is that possibly going to be nonfunctional so that it's protectable? Well, again, then, Your Honor, I think you're saying that any school could not make a claim for trademark or, excuse me, trade dress infringement. The Burlits Language School could not make a claim for trade dress infringement. I don't think the law goes that far. And I think I've mentioned another case, a Sixth Circuit case, rejected that atomized approach. With all respect, I think you're focusing on, Your Honor, in that. Why don't we hear from you on rebuttal then? Okay. Thank you, Your Honor. Thank you. Councilor. Good morning, Your Honors. Lisa Komatz of the law firm of Boltnage PC on behalf of the appellee in this matter, H. Scott Dempster, and doing business with Virgin Islands Sailing School and Virgin Islands Sailing School. Appellees, as may be obvious, are here to urge you to affirm the district court's ruling on that the appellant's Fairwind Sailing failed to properly plead a claim for trade dress infringement and unjust enrichment. Let's talk about the website. I don't have the complaint right here. I should have brought my iPad with the appendix on it. But does it claim that the website itself is the subject of the trade dress allegation? Your Honor, I do not believe that it does, and neither did the district court. The allegation regarding the website, there were three. The first is a similarity of a website name. All right. I'm going to take one step back and say that Fairwind Sailing's primary website address is fairwindsailing.com. My client also uses visailingschool.com as a website. If the name of the website were implicated, we would have a trademark infringement claim. That was not made. That allegation was not made. So we can put the name of the website aside. The other two allegations Fairwind has made regarding the website concern the use of testimonials, which I will note did not in any way identify Fairwind. They did not say Fairwind. Nothing about those testimonials gave any inkling that they were made, that they concerned when my client captained for Fairwind. Secondly, Fairwind has alleged that a generic picture of one of the catamarans that they used is protectable trade dress. It appeared on my client's website. I will note as a factual matter, as soon as my client was served with a complaint, they removed the testimonials and the photograph, not because they believed they were trade dress infringement, but because they deemed them completely unnecessary and took them off the website immediately as soon as the case was filed. Can I interject something at this point? Absolutely, Your Honor. I assume that your point on the testimonial is it's a testimonial that obviously nearly talks about your client and not about generally Fairwind. Yes, Your Honor. I would make that point regarding those testimonials. Okay. Judge Rendell, I have the paragraph in the complaint that I think we're all looking for. Great. Thank you. I think it's paragraph number 29, and if it's okay, I'll just read it so we have a reference point. Thanks. In breach of his contract with Fairwind, Befard did not keep the information he learned during his tenure with the company confidential. The similarity of the operation of Viz and Fairwind is immediately evident in a cursory review of the website. The marketing is identical. The teaching curriculum is identical. The teaching itinerary is identical, and the same procedures are used for student feedback. Viz even uses pictures of Fairwind's boats on the website to sell sailing lessons and charters as if it was Fairwind. Fairwind did not authorize use of the pictures of its boats by Viz or anyone else. There is clearly competition between Viz and Fairwind. And I'm not certain that there's any other way in which the website is used that could be argued that it's part of the trade dress. I would agree with Your Honor's interpretation, and that's exactly the point. Trade dress, as Your Honor's alluded to in your questioning of opposing counsel, trade dress is focused on the visual elements, the overall look and feel of the visual presentation of a product or service that usually is directed to things like color, graphics, a presentation. And in the services context, we see in cases like Dos Pesos dealt with by the U.S. Supreme Court and Clicks Billiards dealt with by the Sixth Circuit. In the context of services, it's still the overall impression. The Clicks Billiards court was cited by my opponent to address their failure to plead non-functionality. They said all our functional elements here, they conceded functionality of their elements, corrective teaching curriculum, et cetera, and said we didn't plead non-functionality, but we didn't have to because all these functional elements combine to create non-functionality. The problem they have relying on clicks is clicks, as trade dress is appropriately directed to, deals with visual elements. It deals with the look and feel, the aesthetics, if you will, when you walked into a Clicks Billiards hall. Fairwind has failed, Your Honors, to plead anything that gets them where they need to go, certainly with regard to non-functionality. I'd like to take a step back quickly. Judge Greenway. Yes, Your Honor. Let me turn this a little bit. Let's say that we look at your website from a trade dress perspective. Is there anything about your website that you would describe as non-functional or anything that you mention in your website as non-functional from a trade dress perspective? Oh, absolutely, Your Honor. Things like the colors, the background color, the graphics, the color of the graphics. My client's website, I obviously, as Your Honors would expect, I've looked at both of these websites in the context of this litigation. My client has a much more informal feel to their website. They use a lot of family snapshots. They use very bright colors. And for lack of a better term, I would say Fairwind's website has a more sophisticated look. It's clearly professional photography. But the colors aren't the same. The graphics aren't the same. Now, see, we don't know that at this stage, though. It's at the pleading stage. Yes, Your Honor. So we don't know that. So should the court not have just waited and let this play out and looked at the websites and have that extra information in order to decide the case? I would absolutely agree with Your Honor if Fairwind had pled the look, the feel, the graphics, the color of their website, which I would concede would be protectable trade dress if they also managed to allege that it was non-functional, inherently distinctive or acquired secondary meaning, and had the likelihood to confuse. Would website producers be of assistance to the court if they were allowed to testify as to whether, in fact, there is similarity or functionality and so forth? Theoretically, however, Fairwind's failed to plead sufficient facts to get them to the point that they would be able to take advantage of expert testimony on that. Take me a step back. They completely failed to articulate a trade dress. The district court, there are four elements. First, Fairwind's had to articulate a protectable trade dress, which is visual elements, impressions, aesthetics, as you will, if I may say, clicks, overall visual impression, complete tapestry of visual effects, design decisions. They failed to do that. And then they, as the district court also correctly analyzed, they completely failed to plead non-functionality. District court specifically addressed that all the elements pledged by Fairwind were functional. District court specifically addressed their failure to allege inherent distinctiveness. I guess it goes without saying that if even if you allege a protectable trade dress, if it's functional, it's not protected. If it's not inherently distinctive, it's not protected. And if there's no likelihood of confusion, it's not protected. A website or web page can be distinctive. Absolutely. And why isn't the Fairtrade's website distinctive here? It's different from yours. It is. The problem is they didn't plead anything about their website in comparison with our website or any other website. There are no allegations as to why. Required secondary meaning or otherwise. Correct. No inherent distinctiveness, no secondary meaning. And obviously they didn't plead likelihood of confusion either. The district court felt like it was not necessary to undertake the specific to address the complaint and allegation by allegation on likelihood of confusion because they believed my client won on the three prior elements. No protectable visual elements. Everything was functional and there was no inherent distinctiveness or secondary meaning. Can a plaintiff, let's say, put together a trade dress by stitching together a group of functional attributes? Yes. It's the visual aspects of the functional attributes that allow that plaintiff to stitch together non-functionality as we see in clicks billiards. I will point out to the court, even if they believe that the plaintiff did that here, we're sadly lacking on any inherent distinctiveness or secondary meaning. Your chief argument is that they never have never asserted what their trade dress is. Yes. That is part of your argument. That is absolutely part of my argument. And the district court noted that made that finding and discussed how difficult it was to undertake the analysis that they had to undertake under 12 v. six because they really couldn't understand based on Fairwind's complaint what their trade dress was. And to be honest with you, your honors, I stand here today uncertain as to what Fairwind is alleging its trade dress is. How about a website name like Virgin Islands Sailing School? Can that be a distinctive feature of the service that they provide or distinctive feature of a trade dress? Given the fact that it's written out, your honor, I believe that implicates trademark law. Virgin Islands Sailing School would be, I'm going to argue, it's a generic mark. If anything, it's suggestive. That also takes you to the level of needing secondary meaning to make out a trademark claim for the use of their obviously unregistered trademark. If they take a step back, if they were to make this argument, they would have to make the argument. They had an unregistered trademark of Virgin Islands Sailing School that they put together in a domain name. At some point, there's another claim in this case, which is unjust enrichment. Yes, your honor. But you might you might want to address it. Your adversary did not address the point. Certainly the district court ruled correctly dismissing Fairwind's claim for unjust enrichment as well. As aptly pointed out by the district court, Fairwind made only a conclusory allegation that it was enriched, allegedly enriched by my client's conduct. It failed to assert in facts to support its its allegation. But it's not going to know the facts. It's not going to know the amount of profit or benefit. I mean, it was it was vague, but doesn't it stand up under Twombly Iqbal? Isn't it sufficient? Your honor. Clearly, I don't believe so. And neither did the district court. And I'll explain why. Defendant's allegation was in. 2011, as several months after my client allegedly started started business. Assuming that that's true at that particular point in time, they alleged in May, June and July of 2011, they filed the complaint on May 18th. They alleged May, June, July 2011 that their bookings had gone down by, I believe, 15,000, 25,000 and 18,000 dollars respectively for those months. Just because their bookings went down doesn't mean my client saw any benefit. Also, just because the bookings went down doesn't mean it was causally related to my client's behavior. The economy could have and did declined at that point, that summer season in the Virgin Islands. Vigories of business. I mean, they may not be able to prove that case, but they certainly can can avert. Can they not? They cannot. But your honor, as a district court, it was purely speculative. They alleged as of the date of the complaint, May 18th, their bookings were down for the next several months. Well, they also say that you took their sailing curriculum and you also you also hired away one of their key employees. Can't unjudged unjust enrichment be supported by those two acts? If they had alleged we had actually sustained benefit, if they had alleged facts that we sustained benefit from those allegations, the facts of which this court must assume is true, obviously. I won't put the factual predicate. I want to address the factual predicate and the truth or falsity of those claims. They just it does not get them where they need to go in terms of unjust enrichment under the precedent in the Virgin Islands. The Hyatt case, it's very clear potential speculative future losses are not enough to sustain a claim for unjust enrichment. And I'll emphasize again, their allegation was that their bookings went down. They filed this. Perhaps their bookings went up. Perhaps they also said they should return to Fairwind all of the profits they've made and continue to make while trading on the trade dress. So they're alleging that there were profits made and that they should be returned. Isn't that sufficient? Your Honor, the district court didn't find it sufficient, and I don't believe it's sufficient under Twombly or Iqbal. All right, Judge Greenaway. The question that I had had to do with what they pled under their unjust enrichment. The only thing they said was that Dempster and Viz have been enriched by their improper and unjustified conduct. A couple of questions. I presume given that the tortious interference is outside of the case that as we look at this, we can only look at what was alleged in count one and then in count three, right? Yes, Your Honor. And as far as what was alleged in count one, that merely that the trade dress violation led to their business going down. And that and that's it, because it was I presume your argument is it's in such a conclusory, it's alleged in such a conclusory fashion, it clearly doesn't adhere to Twombly and Iqbal. Yes, Your Honor. And I'd make an additional point with regard to my client's unjust enrichment claim. As Your Honor noted, the claim for tortious interference with contract was voluntarily dismissed. Now, as the complaint stands, Fairwind's claim for unjust enrichment is solely predicated on the claim that the ISS infringed upon its trade dress. Should this court find that Fairwind failed to plead a claim for trade dress infringement, Fairwind's claim. Pardon me. I don't know if I said that correctly. Let me let me restate. If the court finds it failed to plead a claim for trade dress infringement, there is no genesis or no basis for their claim of unjust enrichment. So if this court upholds the district court regarding Fairwind's failure to state a claim on trade dress infringement, necessarily their claim for unjust enrichment. False. So you're saying there is some underlying wrong that gives rise to. Yes, Your Honor. All right. Thank you. We will we will take your your argument under advisement and we will ask for rebuttal on this aspect of the case. Yes, Your Honor. So I wanted to just mention I mentioned a Second Circuit case. We've mentioned the clicks case in our briefs regarding the importance of looking at the elements in combination. I'm sorry, Second Circuit case. Yes, that was the the LaSporta v. Kmart 754 F Second 71 in 1985 case that again emphasized that even if the individual elements. Is that in your brief? That is not in my brief, Your Honor. Why are people doing things backwards? I apologize for that. All right. Give us that again, because I don't think 754 F Second 71 LaSporta L.E. capital S.P.O.R.T. S.A.C. I guess LaSport Sac. LaSport Sac. All right. Kmart and said, look, even if the individual elements viewed in isolation are functional, you can still have a trade dress infringement based on the overall look. You know, Ms. Coggins, it makes a very good point. You've never really asserted in a complaint that district court had this problem. And I ask you, what's my first question? What is your trade dress? What is the the appearance that you want the public to see? What's distinctive about you separate from other sentence courts? It's hard to articulate. Even if you look at Judge Gibson's opinion, it's hard to articulate a look and a feel of a Web site. If you ask me what McDonald's looks like, I think I can tell you Burger King and Pizza Hut got a red roof. I can tell you what it is. Yeah. Now, what what do you want the public to come away with when they see your school fair wind sailing school? It's the it's the testimonials. It's a distinctive visual effect. It shouldn't be that when we look at there at Apelli's Web site, we say, ah, this must be fair wind because it's yellow and green. And I go this thing and the printing's the same type. And it does it out of that. Isn't that really what needs to be pled? It's the formatting, but it's also the content of the Web site. You can't really make an absolute distinction between. Well, but if what's required is a distinctive visual effect. Distinctive visual effect. And we think if you compare the two Web sites, you'll see that one borrows the visual effect of ours. And I isn't that all we need to allege? Your Honor, at the pleading stage, this is not a summary judgment motion. These other cases in the Seventh Circuit case also very I did not cite in the brief. That is computer care versus service systems enterprises reported at 982 FSEC, FSEC and 1063. All right. I would like you to give your opponent these three cases. You've got conference archives, sports sec and computer care. And each of you can file letter briefs, not more than three pages as to the relevance of these cases. Because it's really not fair for us to be doing this kind of in a move with a moving target. So within within five days, if you each would file supplementary letter briefs, not more than three pages as to the relevance of these cases. I'll provide copies today by email. All right. Thank you. I'm the unjust enrichment, Your Honor. We don't understand the court's ruling. The court said there are three elements to a claim. Defendant was enriched. The enrichment was a plaintiff's expense and equity and good conscience compel a return of the money to plaintiff. The court suggested that the second and third elements were probably satisfied. But in other words, in the second element was an enrichment at plaintiff's expense. How can you possibly have a second element being satisfied and enrichment at plaintiff's expense, but not the first element? The defendant was enriched. The second element presupposes enrichment. And we've alleged diversion of business. Judge Greenaway is asking a question. Yes? Do you agree with the proposition that if we fail to agree with you on freight risk, that your unjust enrichment claim goes away? No, I think there'd have to be – there could be independent – there's diversity jurisdiction, and we'd have to – the amount of controversy. It's not a matter of jurisdiction. It's a matter of unjust enrichment arises out of a wrong, if you will. And if there's no trade dress violation, you can't just go around and say, oh, you know, you were unjustly enriched because I don't think it's fair. I mean, there has to be an underlying cause of action, doesn't there? I don't agree with Judge Greenaway's suggestion earlier in this exchange with opposing counsel that the dismissal of the second count means that none of the allegations, that factual allegations made in the second count or in the common allegations – I mean, there are common allegations here regarding breach of duties of – I think the point is that unjust enrichment cannot stand alone. Right. But if there can be breach of duties, and we do allege a breach of duty in our common allegations, the restatement third of unjust enrichment – The duty has to arise out of something. Pardon me? What does the duty arise out of? The duty would be the Bouchard contract. But that's no longer in the case. Right, but that – there's still, as Your Honor mentioned, we can't ignore the fact that an employee went from – took business – But you did, by dismissing it, you did take it out of the case. The tortious interference claim, which is – but I don't think that the breach of duty is necessarily taken out of the case, Your Honor. And I think – I mean, the restatement – It has to arise from something. If the contract's not in the case anymore – Well, the local law may provide broader protection for that kind of intellectual property. This is really an evolving area of the law. You're not saying that the trade dress violation resulted in unjust enrichment, then? That's not the argument? No, it's a separate claim. There's some overlap, Your Honor. But I think that – we think that copying was wrong, that we think that the local law could provide other protection. The restatement third has 70 sections. Wait, you have not pled local law providing protection, have you? Well, that is a local law claim, unjust enrichment, Your Honor. That is a common law – I thought you were saying there's an underlying local law that provides for a duty. No, not a statutory violation, Your Honor. We're not alleging that. But the restatement third of restitution and unjust enrichment – and they're treated synonymously, unjust enrichment and restitution – I mean, it has 70 sections. It is an extremely broad concept, and – I know. I participate in ALI all the time and know how broad those things are. So I don't – we don't understand the judge's dismissal of the unjust enrichment. All right, why don't we move from the merits argument, if you will, into the issue of the fees, all right? Yes, Your Honor. Happy to do that. Okay. And we'll put – we'll say – let's say 10 minutes aside on this. Do you want to reserve some rebuttal of that 10 minutes? Maybe a minute, Your Honor. All right, we'll do that. Thank you. Thank you. Your Honor, it's long been the rule in the Virgin Islands that Section 541 of the Virgin Islands Code, our fee-shifting statute, only applies to fees incurred in litigating local law claims. Your Honor – What should the judge have done here? Your Honor, he was – he probably should have – if he could, he would have apportioned time as between the local law and the federal law claim in accordance with Your Honor's opinion in the Figueroa case. That's fairly clear, isn't it? Yes. I mean, the court clearly erred and did not follow Your Honor's opinion in Figueroa. Yes, how dare he? And those had to be subtracted out, but there was no basis for subtracting them. If you review the time entries, they don't segregate time as between litigating the local law claim and the Lanham Act. Now, should the Lanham Act claim have been – should fees have been awarded? Under the Lanham Act? Yeah. No, Your Honor, we don't believe so. So if he got that right, you'd never even have to allocate at all, correct? There's the intertwining theory that – All right, so you're saying that he could have awarded them under the Virgin Islands law, but not under the Lanham Act. Is that right? He could conceivably have awarded fees for litigating or defending the local law claims only under Section 541. Unfortunately, they really did not argue for apportionment under Section 541. They gave the judge no basis. They may have waived an argument if there's a remand on that issue. But even more important, if you review their time records, Your Honor, that are part of the supplemental appendix, there is no segregation. Well, they're not going to request apportionment. They're going to request the whole thing, correct? They're going to say it was exceptional under Lanham and we get them under the VA as well. Well, Your Honor, I was hoping that this court would reject that affirmative ground for affirmance as a matter of law, that on this record, this is not an exceptional case. And I think it's telling that in our May 1st letter brief to the court on the Octane case, we mentioned the Securicom case, and that's been mentioned in the other briefing. A very different case, Your Honor, where the... Isn't Securicom pretty much pushed aside by Octane? I mean, Octane rejected the idea of compartmentalizing based upon certain standards. And we have compartmentalized in saying it's culpability. Justice Sotomayor noted that, you know, you can get fees for culpable conduct, so you don't have to say that that's an exceptional case. So aren't we really under Octane and Securicom is pretty much pushed to the side? Well, we still have to meet the language of the statute, and Justice Sotomayor makes that clear. Exceptional, which means it's different from others in terms of its strength or the conduct of counsel, wouldn't you say? Right, and I think at the pleading stage, how on earth can a judge determine that? I mean, and that case, the Securicom case, whether it's, even if Your Honor were correct, that its vitality has been affected, I don't necessarily agree with that, but it's cited, that was a case involving a prevailing plaintiff. The plaintiff in the prior case had established infringement and gotten equitable relief. The damage relief was overturned, but the defendants in that case engaged in a lot of vexatious behavior. Complaints against bar associations, plaintiff's attorneys, suits, they brought a suit in the District Court of Columbia, Superior Court. But I think the key thing in that case is that the court mentioned, the Third Circuit mentioned, this other case, a District Court case that is cited in our letter brief, that says it's rare for exceptionality to be found in the context of a motion to dismiss. You simply don't have a sufficient record. Where is the exceptionality here? Well, how about if it's frivolous? If it's frivolous, Your Honor, yes, that would meet the standard, but there's no suggestion that our claim was frivolous, and I don't think that the judge made no such suggestion, and I don't think that that could be sustained if he had. So do we send this back, or do we decide for ourselves? I think you can, on the Lanham Act, you can simply reject outright the notion that this was an exceptional case. You can send it back for apportionment. You could. I think it would be helpful if the court says that, you know, it should be based on the ability to segregate time, allocate time in the time record. How about fictitious interference? I mean, that was dismissed with prejudice. I mean, we have held in Paoli that dismissal without prejudice can lead to someone being a prevailing party. Wouldn't that be even more true when the dismissal was with prejudice? That was a voluntary dismissal, Your Honor. Yes. It was not on the basis of briefing that was done by the defendant. Right, but we've had that voluntary dismissal in Paoli Railyard. Plaintiff voluntary dismisses his action without prejudice. The defendant can be considered the prevailing party. For purposes of the court rule on costs, but I don't believe that's true of Section 541, is it, Your Honor? Well. Because I had a case with. I guess that's for the district court to decide. Right. With respect to that. I think some guidance on the issue, you know, that the Figueroa applies and that there should be, if the fees on the federal, on litigating the federal claim, which was the bulk of the briefing, Your Honor, and the bulk of the court's opinion, the unjust enrichment is dealt with in a couple of pages. We think that there has to be some basis in the time records. Otherwise, it would be arbitrary for someone to come in and say, oh, well, there's two claims. How about one half? There's got to be. I think there should be some instruction of the lower court. And we don't think that there should be fees for unsuccessful motions. The court should consider that. If we decide this case, as you urge, which is to say that this is not an exceptional case, this is a trade dress fight that was resolved, the litigation was not that exceptional, but was not terrible, let's say. So what do we decide then? Do we send the case back, or is that pretty much the end of the case, as far as the treaty fees are concerned? If you found that the other side has waived its right to seek apportionment, I mean, if you look at their fee petition, they did not argue for, they argued for everything under Section 5. Are they entitled to fees under Virgin Islands? Nonetheless, apart from the Lanham Act, are they entitled to fees under the Virgin Islands statute? They are for the claim, for litigating local law claims, if there is some rational basis for segregating the time that they spent defending the local law claim. Are you saying they should have cross-appealed requesting allocation? Possibly. Or they should have made the request in the lower court, in the first instance. If you look at the briefcase... Well, they're not going to request that. You're going to request that. They're going to ask for the whole ball of wax. They asked for the whole ball of wax under the Lanham Act, and then almost as a by footnote, by way of footnote, they said we're also entitled to the whole ball of wax under Section 541. That's where I think they ought to have told the court, frankly, we are only entitled to fees for litigating local law claims, and here's how we propose to apportion that. There was none of that. Well, they're entitled to fees in the district court for the Lanham Act case. Pardon me? They're entitled to fees under the Lanham Act for defending in the district court. Only if it's an exception. If it's an exception, okay. But they put all their eggs in that basket, basically, and then when they got to... and perhaps it was because they knew that their time records would not support any ability to segregate as between local law defense and federal law defense for Section 541 purposes. Their brief put almost all their eggs in the Lanham Act basket. Their brief in the lower court and here on appeal. What was the local law issues that they defended? Was that the tortious interference? That was the unjust enrichment. Unjust enrichment. They did not move to dismiss the tortious interference. They moved to dismiss the Lanham Act, the trade dress infringement, and the unjust infringement. All right. Thank you. Thank you very much, Your Honors. We'll grant you the one-minute rebuttal if you want to. I have a question about exceptional as it relates to this issue. Yes, Your Honor. So Justice Sotomayor talks about exceptional in the context of the Brooks case and says that in that case under Section 285, exceptional is when there has been some material inappropriate conduct related to the matter in litigation such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, or some other conduct that is Rule 11-like. Your adversary has said that in no way can the notion of exceptional be applied here. If we are to follow Octane, don't we have to find exceptional applied here and what are the facts that we should look to to come to that conclusion? Yes, Your Honor. It's absolutely correct. Octane does apply here and it militates in favor of finding an exceptional case in favor of my client. The Court started your question, Your Honor, by discussing Judge Sotomayor's discussion of Brooks furniture in Octane and she specifically rejected, and I'll quote, we reject Brooks furniture for another reason. It's so demanding it would appear to render Section 285 superfluous. We have long recognized a common law exception to the general American rule against fee shifting, an exception inherent in the power of the courts for willful disobedience. When losing parties acted in bad faith, vexatiously, wantonly, or for oppressive reasons. So you're saying she rejected that? She rejected that. Octane absolutely, hands down, rejects that for the reason that that separately sanctional bond or Rule 11, the Supreme Court's formulation of an exceptional case, obviously does not reach conduct, sanctionable conduct. That brings me to Part 2 of my question. Yes, Your Honor. Which is her holding. So she says we hold in an exceptional case is simply one that stands out from others with respect to substantive strength of the party's litigating position. And I don't want to read the whole thing, but I know you know where I'm going. Yes, Your Honor. Strength or conduct. Yes, or litigation, unreasonable manner in which the case was litigated. Exactly. So based on that as the sort of final word from Justice Sotomayor, how is that test met here? Certainly. And how can we decide at the pleading stage? Well, first, I'd have Your Honors look to the pleadings. And I'd like to bring up, well, actually, let me take one step back and address pre-litigation conduct on behalf of Fairwind that I believe supports, is one of the elements, one of the facts that supports the finding of an exceptional case. Fairwind has been involved in Lanham Act litigation before. I attached the Solstice complaint to my motion for attorney's fees. They sued Solstice Sailing for Lanham Act trademark infringement claim. Now, prior to suing Solstice Sailing, they sent a cease and desist letter, which is absolutely standard practice. I've done a lot of IQ litigation. I have never represented a plaintiff where I personally have not sent a cease and desist letter. No cease and desist letter was sent in this case. I think that speaks volumes to the motivation of Fairwind for suing my client. I think if they really had trade dress, they believed it was being infringed upon my client, they would have at least asked my client, please stop. Here's our trade dress. Please stop infringing. No, nothing. But does that make it exceptional? May I continue? Pardon? I have other facts I'd like to point the court to. I think that that certainly militates in favor of a finding of an exceptional case. Second to the complaint. So anytime somebody files a complaint without asking for a cease and desist letter, it's exceptional? No. I think it's part and parcel of the entire numerous factors in this case that militate in finding favor, finding an exceptional case. The second I would point the court to. But shouldn't this go back then to the district court and let the district court assess this? I mean, we have a new standard. And if you're saying that it fits under exceptional, if we're finding that these things might be relevant, wouldn't we let the district court do as a fact finder, basically, find out what was done and make that ruling on exceptionality, if you will? Your Honor, my client and I would not argue against remanding this to the district court for those findings, but I will note that this court, under Holt v. Snapple Beverages, can't affirm the district court's ruling on any basis I argued on behalf of my clients in the lower court. It has to be a basis that was found and was presented to the district court. And this is totally out of the record. So we can't just kind of rubber stamp on something that we find because we don't find facts. Well, correct. The facts I'm citing are all part of the record. Okay. Second, with regard to this case, I would argue it's a frivolous case, and I would direct this court's attention to the weakness of the Lanham Act claim for trade dress infringement. As the district court found, they didn't cite protectable trade dress. They did not establish non-functional, allege non-functionality. They did not allege inherent distinctiveness or secondary meaning, nor did they allege likelihood of confusion. This case, there's no there there. There is no trade dress infringement claim, which leads us to the question and the suggestion about why Fairwind brought this case. From my client's perspective, it was purely anti-competitive. They sought to force my client out of business, and frankly, if my client had not been of means, that's exactly what would have happened. This has been an expensive, as I'm sure your honors are aware, an expensive litigation. But my client thought it was important to defend this case to vindicate his rights, and he's very fortunate to be in the financial circumstances to be able to do that. Fairwind has sued several other. Are you, should you have cross-appealed that if you were wrong on the Lanham Act, that the court needed to allocate the time spent on the Virgin Islands cases? Absolutely not, your honor. This court can affirm the district court's ruling on three independent basis. First, this court can affirm finding an exceptional case under the Lanham Act, and you pro forma get fees under V.I.C. 541. All our fees could be awarded using both of those. But doesn't the Virgin Islands, doesn't the district court have to determine that under 541, the dismissal of the tortious interference claim would be prevailing party, would constitute prevailing party for purposes of Section 541? I believe they impliedly made that finding, your honor, in granting virtually all the attorney's fees that I requested. And your honor was discussing with opposing counsel the fact of a voluntary dismissal with prejudice and whether that you are a prevailing party as a prevailing defendant when a plaintiff dismisses with prejudice in that way. This has been discussed both by the Virgin Islands Supreme Court in Island Tile Marble, pardon me, Island Tile and Marble v. Bertrand, and it has also been discussed by our district court in Branniker v. Hotel on the Cay. I believe your honor was addressing that case. That case cited palely and indicated that a dismissal of prejudice gave my client prevailing party status, and then they actually went on in that case to discuss whether a prevailing defendant got their fees under 541. That was a personal injury case, and they didn't believe the case rose to the level of frivolity, which is the standard for personal injury under 541. This court can also affirm finding a Lanham Act is an exceptional case under the Lanham Act. All the fees incurred in defending against the territorial law claims under the doctrine of inextricably intertwined. That's a Ninth Circuit doctrine. I don't think we've ever really applied that. In fact, the Figueroa case pretty clearly we have to allocate. Well, that great... I think inextricably intertwined, I mean, if there's a bad faith claim that's a claim under Virgin Islands law and a bad faith claim that's a claim under federal law, then I think there is that intertwining. But presumably, they should be able to piece out, you know, what research and other things were done, you know, with respect to whatever the unjust enrichment claim is and the Lanham Act claim. It should be able to be done. For example, Your Honor, we mediated this case. I submit to this court it's impossible to parse out what portion of my attorney's fees for conducting mediation were allocatable to the trade dress infringement claim, the tortious interference claim, or the unjust enrichment claim. I would say we first file the motion to dismiss. Well, there the district court's going to have to make a judgment. Was it the strength of the trade dress claim? I mean, they're going to have to... But something's got to give. They've got to come up with a number, basically. Well, they certainly, in awarding me all my... Pardon me, in awarding my client all the attorney's fees incurred. Impliedly, under 541, they impliedly made a judgment this was inextricably intertwined and granted the entire... Well, they didn't. But they did not. I mean, the judge did not address Lanham at all, did not mention any exceptional. And so it's going to have to go back for that purpose, at least. As I noted earlier, Your Honors do not have to reach that result, but my client would not argue against the district court making that analysis. Thank you. Do you wish a rebuttal, Mr. Herpel? Just a very short one. All right. Your Honor, on the... I mentioned a case that was cited in our letter brief of May 1st, and I just wanted to emphasize that was the Gamla Enterprises, North America v. Lunor Brillen Design. The Lexus site is 2000 U.S. Disc Lexus 1515. It's cited in the letter. I just wanted to point out that that case was cited approvingly by the Securicom court, and it deals with the prevailing defendant and points out that it's rare to find an exceptional case at the 12B6 stage. The record simply isn't sufficiently developed. It's normally done after a full trial on the merits, which is what happened in the Securicom case. There were actually documents before the district judge, Depa Watt, I believe, that showed the improper purpose, the defendants, in trying to crush the complaintant who had brought the infringement suit. So I do think the court should reject the affirmative ground, the alternative ground for affirmance, and reject that and really remove it as an issue in this case. If there's going to be a fee award, in my view, it should be under Section 541, but with the appropriate apportionment under a bigger role. Thank you, Ron. Thank you. The case is well argued. We'll take it under advisement, ask the clerk to recess court, and we will remain in the courtroom and confer with Judge Greenaway.